## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Jeffrey Loch, | Case No.: 0:21-cv-2582 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Wells Fargo Bank, N.A., | JURY TRIAL DEMANDED |
| Defendant. | |

## <u>INTRODUCTION</u>

1.  Congress has found that the primary purpose of the Electronic Fund Transfers Act is "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems. The primary objective of this subchapter, however, is the provision of individual consumer rights."

2.  This action arises out of violations of the Electronic Fund Transfers Act ("EFTA") 15 U.S.C. § 1693 *et seq.* and its implementing Regulation E, by Defendant and its agents in their illegal transfers of funds from Plaintiff's bank account.

3.  Plaintiff seeks actual damages, statutory damages, costs and attorney fees.

## <u>JURISDICTION</u>

4.  Jurisdiction of this Court arises under 15 U.S.C. § 1693m and under 28 U.S.C. § 1367 for pendant state law claims.

5.  Venue is proper because the acts and transactions occurred here, Plaintiff resides

here, and Defendant transacts business here.

6.     Defendant has transacted business within the State of Minnesota by providing banking services to Plaintiff via the mails, telephone, and internet while Plaintiff was located within and permanently residing within the State of Minnesota.

## PARTIES

7.     Plaintiff Jeffrey Loch (hereinafter "Plaintiff") is a natural person who resides in the City of Richfield, County of Hennepin, State of Minnesota, and a "consumer" as that term is defined by 15 U.S.C. § 1693a and 12 CFR § 1005.2(e).

8.     Plaintiff has suffered an injury in fact that is fairly traceable to Defendant's conduct and that is likely to be redressed by a favorable decision in this matter.

9.     Defendant Wells Fargo Bank, N.A. (hereinafter "Defendant") is a national bank and a covered "financial institution" under EFTA 15 U.S.C. § 1693a(9), with a principal of business located at 1 Montgomery St 2nd Fl, San Francisco, CA 94104-4505, and with a registered agent of process named Corporation Service Company located at 2345 Rice Street, Suite 230, Roseville, MN 55113, and is an entity covered by 15 U.S.C. § 1693 and under Regulation E, 12 C.F.R 1005.2.

## FACTUAL ALLEGATIONS

10.    Within one year immediately preceding the filing of this complaint, Defendant initiated and/or attempted to initiate certain electronic funds transfers from Plaintiff's bank accounts to unknown third-party identity thieves, which were "electronic funds transfers" as that term is defined by 15 U.S.C. § 1693a(7).

11.    Defendant holds accounts belonging to Plaintiffs and has issued access devices with

an explicit agreement to perform electronic funds transfers and therefore it is also a covered "person" under EFTA. Reg. E, 12 C.F.R. § 1005.2(i).

12.    On or about August 27, 2021, unknown identity thieves fraudulently obtained certain electronic access devices from Plaintiff through the use of fraud and artifice, posing as Defendant's security employees in telephone calls and text messages, in order to later initiate a series of fraudulent electronic fund transfers from Plaintiff's accounts with Defendant, and which such transactions were subject to Regulation E and EFTA. *See* 12 C.F.R. § 1005.3(b).

13.    Plaintiff did not authorize or benefit from these fraudulent transfers from his accounts at Defendant's bank.

14.    Immediately upon discovering these fraudulent transfers, and within approximately an hour of the fraudulent transfers, Plaintiff alerted the security department at Defendant's 800-number.

15.    In fact, Plaintiff alerted Defendant's security employees of the fraud when they actually called his cell phone to alert Plaintiff of the fraud while it was taking place on August 27, 2021 between 1:32 p.m. and 2:45 p.m.

16.    Despite the fact that Defendant knew these transfers between and out of Plaintiff's accounts were fraudulent, and that it called Plaintiff when he was on the phone with the fraudster to tell him that a total of $15,000.00 had been wired from his accounts to another account in Houston, Texas and wanted to confirm that he had intended to transfer that large of an amount, Defendant nevertheless allowed the fraudulent

transfers to go through from Plaintiff's personal checking and savings accounts at Defendant's bank.

17.    Later that evening, after a long day delivering COVID-19 vaccinations and filling hundreds of prescriptions for patients as a busy pharmacist, Plaintiff came home to discover $15,000 missing from his accounts at Defendant's bank and that Defendant had failed to stop the transactions even though it had itself detected this fraudulent activity.

18.    Plaintiff immediately re-contacted Defendant to report the fraudulent access and unauthorized transfers from his bank account at Defendant's bank.

19.    Defendant took a report of Plaintiff's fraud claims and told him that it would conduct an investigation.

20.    On August 30, 2021, Plaintiff called and spoke with the Richfield, Minnesota police department and filed a criminal complaint over these fraudulent transfers, a true and copy of which is attached as **Exhibit A**.

21.    Despite having timely reported these fraudulent transfers totaling $15,000, and the Defendant itself being aware that they were fraudulent transfers, Defendant has refused to return the funds from these fraudulent transfers.

22.    Plaintiff has suffered actual and concrete harm as a result of Defendant's violations of Reg E. and EFTA because he has been wrongfully deprived of his funds and Defendant's misconduct has caused his personal budget to be thrown into disarray.

23. Plaintiff explicitly told Defendant's security employees that he did not authorize the Defendant's electronic fund transfers made to his checking and savings accounts and that he disputed those charges.

24. Plaintiff timely disputed this unauthorized electronic funds transfers totaling $15,000 from his account by telephone to Defendant on or about August 28, 2021, and repeatedly thereafter.

25. In addition, Plaintiff disputed these fraudulent transfers from his bank accounts totaling $15,000 by letter to Defendants' multiple fraud department addresses, a true and copy of which is attached hereto as **Exhibit B**.

26. To date, Plaintiff's demands that these $15,000 of unauthorized transfers from his bank accounts be returned to his accounts have been flatly rejected by Defendant, which in one correspondence on September 2, 2021, stated in pertinent part:

> We have completed our research of your recent inquiry about an unauthorized wire transfer request initiated through online banking for $15,000.00 on 08/27/2021. Our research revealed the wire transfer was requested through an online banking session using your username and password. After reviewing all the information available to us regarding the transaction you are disputing, we have determined that the transaction was performed by you, or someone who had your authorization.
>
> As a courtesy, we initiated a wire recall on your behalf to attempt recovery of the funds. Unfortunately, the beneficiary bank responded that there were no funds available to return. As a result, we are unable to reimburse you and have closed your claim.

A true and correct copy of this letter is attached hereto as **Exhibit C.**

*Violations of the Electronic Fund Transfers Act*

27.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

28.    Defendant failed to obtain authorization from the Plaintiff for these electronic fund transfers, as required by, and in violation of, Reg. E and EFTA.  *See* 12 C.F.R. § 1005.10(b).

29.    Defendant made multiple electronic fund transfers from Plaintiff's bank account in the last year immediately preceding the filing of this lawsuit, within the meaning of Regulation E and EFTA, without having first complied with the requirements of those federal laws.  *See* 15 U.S.C. § 1693 and 12 C.F.R. § 1005.10.

30.    Defendant's failure to obtain Plaintiff's authorizations required by the EFTA, prior to instituting multiple electronic fund transfers from Plaintiff's bank account, constitute multiple violations of the EFTA, 15 U.S.C. § 1693.

31.    Defendant engaged in numerous unfair acts and practices by withdrawing payments and withdrawing payments in variable amounts from Plaintiff's bank account without a valid authorization and transmitting those funds to an unknown fraudster, and thereafter refusing to return these fraudulently transferred funds, in violation of the Electronic Funds Transfer Act (EFTA), 15 U.S.C. §1693e(a) and (b), and Regulation E, 12 C.F.R. § 1005.10(b) and (d).

*Rules for Dispute Resolution Under EFTA and Reg. E.*

32.    Under Regulation E, if a consumer like the Plaintiff alleges that there has been an unauthorized transfer from his account, the financial institution must investigate and

determine if the allegation is true, correcting any unauthorized transfer that occurred. If that financial institution is unable to complete its investigation within ten days, it must provisionally re-credit the consumer's account while it completes its investigation. Reg. E, 12 C.F.R. § 1005.11(c)(2).

33.   If a consumer alleges that an EFT is unauthorized, the burden of proof is on the financial institution to show that it was authorized or that the conditions for consumer liability have been met. 15 U.S.C. § 1693g(b). *See* Pace v. Gulf Coast Bank & Tr. Co., 2014 WL 4657482 (La. Ct. App. Sept. 17, 2014) ("Ms. Pace had a duty to notify the Bank of any errors or unauthorized ATM transactions within 60 days after receiving documentation of the electronic transfer. Thereafter, the burden of proof is on the Bank to prove that the debits were authorized and that the loss would not have occurred but for her failure to report Mr. McCray's transfers within sixty days of transmittal of her periodic statement.").

34.   Any person (not only a financial institution) who fails to comply with any EFTA provision is liable under 15 U.S.C. § 1693m for the sum of:

> (1) Any actual damage sustained by the consumer;
>
> (2) Statutory damages in an individual case of not less than $100 nor greater than $1000 or, in a class action, such amount as the court may determine, with a maximum of the lesser of $500,000 or 1% of the Defendant's net worth; and
>
> (3) The costs of the lawsuit together with reasonable attorney fees.

15 U.S.C. § 1693m(a).

35.   A second special EFTA remedy provision makes a financial institution liable for

treble damages under 15 U.S.C. § 1693f(e) if it did not provisionally re-credit a consumer's account within ten days after receiving the consumer's notice of an error and either 1) did not conduct a good faith investigation or 2) did not have a reasonable basis for believing the consumer's account was not in error. 15 U.S.C. § 1693f(e)(1).

36.    The financial institution is also liable for treble damages if it knowingly and willfully concluded that the consumer's account was not in error when it had no reasonable basis for that determination. 15 U.S.C. § 1693f(e)(2).

37.    Pursuant to 15 U.S.C. § 1693f(a)(3), upon notice of a dispute from a consumer, a financial institution is under an obligation to investigate the nature of the dispute and report back to the consumer the results of the investigation.

### *Untimely Investigation of Plaintiff's Dispute Under EFTA*

38.    Upon receiving notice of a disputed electronic funds transfer, a financial institution:  "Shall investigate promptly and … shall determine whether an error occurred within 10 business days of receiving a notice of error. The institution shall report the results to the consumer within three business days after completing its investigation. The institution shall correct the error within one business day after determining that an error occurred." 12 C.F.R. § 205.11(c)(1).

39.    A financial institution may also take up to 45 days to conduct its error investigation, provided that it "[p]rovisionally credits the consumer's account in the amount of the alleged error (including interest where applicable) within 10 business days of receiving the error notice." 12 C.F.R. § 205.11(c)(2)(A).

40.     In response to a dispute from Plaintiff, Defendant failed to conduct a good faith investigation within (10) business days in compliance with 15 U.S.C. § 1693f(a)(3) and failed to timely mail the results of that investigation to Plaintiff within (3) business days, as required by EFTA.

41.     Defendant failed to conduct a timely good faith investigation into the reported errors made by Plaintiff, because it was already well aware by its own conduct that these fraudulent transfers from Plaintiff's account were in fact fraudulent.

42.     On August 27, 2021, Defendant's fraud department called Plaintiff to determine whether or not Plaintiff had actually intended to transfer these funds from his bank accounts—itself recognizing that these transactions were fraud.

43.     Defendant also took immediate actions on August 27, 2021, after Plaintiff reported the fraudulent transfers, to close both Plaintiff's checking and savings accounts and open new accounts for him with new account numbers, thus establishing beyond any doubt that Defendant was aware that Plaintiff was a victim of identity theft and fraud and that these transfers totaling $15,000 were fraudulent.

44.     Defendant also acknowledged in its September 2, 2021, letter to Plaintiff, Exhibit C, that it was aware that these $15,000 in funds were an unauthorized transfer and it even attempted to get them back from the Houston, Texas that had apparently received them.

45.     On August 27, 2021, Defendant was well aware that these transfers were unauthorized and fraudulent, but nevertheless, five days later on September 2, 2021, blamed Plaintiff in bad faith, accusing him of either transferring this $15,000

himself or authorizing the fraudulent transfers without a shred of evidence to support that defamatory assertion.  See **Exhibit C** ("After reviewing all the information available to us regarding the transaction you are disputing, we have determined that the transaction was performed by you, or someone who had your authorization.")

46.   Defendant knew that the statement it made victim-blaming Plaintiff for the loss of his $15,000 was false and had no basis in any fact or evidence.

47.   Upon information and belief, Defendant did not speak with the Richfield Police Department about Plaintiff's criminal complaint; did not interview any witnesses other that brief conversations with Plaintiff; did not send any investigators or branch personnel to Plaintiff's home or work; did not ask for a personal interview with Plaintiff at a branch location; did not seek to meet with Plaintiff to explore the circumstances around the loss of his $15,000; and did not do any other type of research or good faith investigative whatsoever before making its unilateral determination that Plaintiff had made these fraudulent transfers himself, or authorized another person to make them.

48.   Despite the fact that Defendant had up to 45 days to conduct a proper, fulsome, and good faith investigation of the circumstances surrounding the unauthorized transfers of this $15,000 in funds,  Defendant instead simply sent out a form letter making a groundless blanket denial of Plaintiff's report of unauthorized claims.  **Exhibit C.**

49.   Defendant failed to correct the alleged errors within the timelines outlined in Reg. E. and therefore was obligated to provisionally credit Plaintiff's account but failed

to do so.

### *Improper Investigation of Plaintiff's Dispute Under EFTA*

50. Defendant did nothing in good faith to investigate his claim of fraud.

51. Defendant also did not provisionally recredit Plaintiff's account while it was undertaking its improper investigation into Plaintiff's dispute.

52. Defendant had no reasonable basis to conclude that an error in fraudulently transferring these funds on Plaintiff's account and that the $15,000 fraudulent withdrawals did not belong to him, as he had reported to the Richfield, Minnesota Police Department within a few days after he discovered his bank accounts with Defendant had been illegally accessed.

53. Plaintiff told Defendant repeatedly about his police report and criminal complaint made about this theft and Defendant nevertheless failed to undertake any good faith investigation or provide him with a provisional recrediting of his account.

54. There was more than enough information available to Defendant's investigators Plaintiff to confirm that he was a victim of fraud.

55. Pursuant to 15 U.S.C. § 1693f(d), if a financial institution determines after conducting an investigation that an error did not occur, it must, upon receipt of a request from the consumer, promptly deliver to the consumer reproductions of all documents with the financial institution relied on to conclude that such error did not occur.

56. Plaintiff requested all documents that Defendant had relied upon during its investigation, but Defendant never provided him with any such documents.

57.  Defendant received oral and written notice of Plaintiff's dispute of an erroneous and fraudulent payment by Defendant from Plaintiff's account for $15,000 and therefore received sufficient information to identify Plaintiff by name and identify by number Plaintiff's account with Defendant.

58.  Within ten (10) business days of receiving written notice of his dispute, Defendant was under an affirmative obligation to investigate the dispute from Plaintiff, determine whether an error had occurred, and report or mail the results of such an investigation and determination to Plaintiff.

59.  Alternatively, if within ten (10) business days of receiving written notification of Plaintiff's dispute, Defendant had provisionally recredited Plaintiff's account with the funds relative to the amount alleged to be in dispute, then Defendant would have had forty-five (45) days to complete its good faith investigation into Plaintiff's dispute and to report or mail the results of such an investigation and determination to Plaintiff.

60.  Under EFTA, if a financial institution like Defendant, after conducting an investigation into a dispute by a Plaintiff, determines that an error did not occur, it must deliver or mail to the consumer an explanation of its findings within three (3) business days after the conclusion of its investigation, yet Defendant failed to do so because it did not conduct a good faith investigation as required by EFTA.

61.  Plaintiff never provided any person with permission, consent or authority to debit the fraudulent $15,000 funds from Plaintiff's accounts with Defendant.

62.  Plaintiff never authorized the debits of the fraudulent funds from Plaintiff's account

with Defendant.

63.    Defendant has not conducted a good faith or reasonable investigation into the disputed $15,000 in funds fraudulently taken from by Defendant.

64.    To date, Defendant has not issued Plaintiff a credit for the $15,000 of fraudulently transferred funds from Plaintiff's account with Defendant.

65.    Presently, Plaintiff remains without the $15,000 in funds debited from Plaintiff's account with Defendant without his knowledge, authorization, or benefit.

66.    Defendant's affirmative conduct, and omissions, as more fully described herein, were done in violation of  15 U.S.C. §1693f(a)(3).

67.    Defendant's conduct, as delineated above, is in violation of 15 U.S.C. §1693f(d).

68.    Defendant's conduct, as delineated above, is in violation of 15 U.S.C. §1693f(e)(1).

69.    As a result of Defendant's violations of EFTA, Plaintiff has suffered, and continues to suffer mental anguish, emotional distress, and out-of-pocket damages.

70.    The loss of these funds for several months has placed an extreme financial burden on Plaintiff and made keeping current on his bills more difficult.

### *Transfers Made Through Fraud Are "Unauthorized Transfers" Under EFTA*

71.    The Official Staff Interpretations of the EFTA specifically state that victims of robbery or fraud who have their funds fraudulently transferred are not liable for those transfers under EFTA because they are "unauthorized" funds transfers:

> 2(m) Unauthorized Electronic Fund Transfer
>
> …
> 3. Access device obtained through robbery or fraud. **An unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through fraud** or robbery.

12 C.F.R. § Pt. 205, Supp. I., section 2(m)(3) (bold added).

72.    A federal court in this district rejected Defendant's approach to denying EFTA liability to a customer whose funds were taken by the fraudulent use of an access device to make transfers out of his bank account:

> In other words, Kubrom would have had to **steal** the ATM card and pin number. While TCF may well successfully challenge this version of events at trial, this Court simply cannot conclude that it constitutes the "furnishing" of an individual's account information as a matter of law. <u>**To reach that conclusion here, the Court would have to interpret the EFTA to limit the liability of a financial institution in cases of theft, a reading which finds no support in the statutory text quoted above and is rejected in the Code of Federal Regulations.**</u> *See* 12 C.F.R. pt. 205, supp. I, section 2(m)(3) ("An unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through fraud or robbery."). Accordingly, TCF's motion for summary judgment is denied to the extent that it seeks judgment on Rusthoven's EFTA claim.

<u>Rusthoven v. TCF Nat. Bank</u>, No. CIV 07-3154 JRT-JJK, 2009 WL 2171105, at *3 (D. Minn. July 20, 2009) (bold underline added).

### *Defendant's Past Conduct Toward Its Customers Warrants Treble Damages*

73.    Defendant is no stranger to regulatory action against it for this kind of mistreatment of consumers, like Plaintiff, given that there are at least 10 consent decrees currently in place by the Federal Reserve, Office of the Comptroller of the Currency, and the Consumer Financial Protection Bureau for Defendant's marketplace misconduct. https://www.fool.com/investing/2021/10/10/a-guide-to-all-of-wells-fargos-consent-orders/, last accessed November 13, 2021.

74.    Ironically, Defendant was hit with regulatory actions and class actions for its anti-consumer practices in selling banking customers identity theft protection that they

never received:

> Wells Fargo & Co. will refund tens of millions of dollars to customers who paid for identity-theft protection, pet insurance and other add-on services offered by the bank, the Wall Street Journal reported Thursday.

> The San Francisco bank has been looking into problems with add-on products since the summer of 2015, when regulators slapped Wells Fargo with a consent order saying some customers had paid for identity theft and credit-monitoring services they never received.

"Report: Wells Fargo will pay millions in refunds for pet insurance, other add-on products," July 19, 2018, available at https://www.latimes.com/business/la-fi-wells-fargo-refunds-20180719-story.html, last accessed November 13, 2021.

75. Defendant's treatment of Plaintiff is even less surprising given that last year Defendant settled its civil and criminal liability in federal court for engaging in a pandemic of its own fraud and identity theft of its own customers between 2002 and 2017, and paying a $3 billion dollar fine:

> Wells Fargo, the nation's fourth-largest bank, agreed Friday to pay a $3 billion fine to settle a civil lawsuit and resolve a criminal prosecution filed by the Justice Department over its fake account scandal.

> Under pressure to meet sales quotas, bank employees opened millions of savings and checking accounts in the names of actual customers, without their knowledge or consent. Since the fraud became public in 2016, the bank has faced a torrent of lawsuits. The scheme lasted more than a decade, Justice Department officials said, and was carried out by thousands of Wells Fargo employees.

> "This settlement holds Wells Fargo accountable for tolerating fraudulent conduct that is remarkable both for its duration and scope and for its blatant disregard of customer private information," said Michael Granston of the Justice Department's Civil Division.
> …

As part of the settlement, Wells Fargo admitted that employees were pressured to sell large volumes of new products to existing customers as a way of generating more business, often with little regard for a customer's actual needs. **Bank employees began calling the practice "gaming," and it included opening accounts without a customer's knowledge, issuing credit and debit cards, and moving money from existing accounts to the fraudulently opened ones.**

As part of Friday's settlement, the Justice Department agreed not to criminally prosecute the bank during the three-year term of the agreement, provided that Wells Fargo continues to cooperate with government investigations.

The agreement was reached with the bank itself, not with any individuals responsible for the fraud. But last month, the bank's former chief executive, John Stumpf, was fined $17.5 million by the Office of the Comptroller of the Currency for his role in the scandal. Other former bank executives were hit with smaller fines.

"Wells Fargo to pay $3 billion over fake account scandal" available at

https://www.nbcnews.com/news/all/wells-fargo-pay-3-billion-over-fake-account-

scandal-n1140541, last accessed November 13, 2021 (bold added).

76.    According to the United States Department of Justice, Defendant engaged in

"gaming" that involved stealing thousands of consumers' identities, opening

fraudulent accounts in their names, and moving their money around without their

consent in order to drive sales:

> **Many of these practices were referred to within Wells Fargo as "gaming."** Gaming strategies varied widely, but included using existing customers' identities – without their consent – to open checking and savings, debit card, credit card, bill pay and global remittance accounts. From 2002 to 2016, gaming practices included forging customer signatures to open accounts without authorization, creating PINs to activate unauthorized debit cards, **moving money from millions of customer accounts to unauthorized accounts in a practice known internally as "simulated funding,"** opening credit cards and bill pay products without authorization, altering customers' true contact information to prevent customers from

-16-

learning of unauthorized accounts and prevent Wells Fargo employees from reaching customers to conduct customer satisfaction surveys, and encouraging customers to open accounts they neither wanted or needed.

https://www.justice.gov/opa/pr/wells-fargo-agrees-pay-3-billion-resolve-criminal-and-civil-investigations-sales-practices, last accessed November 13, 2021 (bolded added).

### *Summary*

77.   The above-described conduct by Defendant in making its fraudulent electronic fund transfers from Plaintiff were oppressive, deceptive, misleading, unfair and illegal conduct, all done in violation of numerous and multiple provisions of the Reg. E and EFTA.

78.   These actions taken by Defendant, and the employees employed by Defendant, were made in violation of multiple provisions of the Reg. E and EFTA, including but not limited to all of the provisions of those laws cited herein.

79.   These violations by Defendant were knowing, willful, negligent and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

80.   Defendant's conduct with respect to these unauthorized electronic fund transfers caused Plaintiff to suffer concrete and particularized harm because the Reg. E and EFTA provide Plaintiff with the legally protected right to be treated fairly and truthfully with respect to any electronic fund transfers.

81.   Defendant's deceptive, misleading and unfair representations with respect to its electronic fund transfers were material misrepresentations that affected and

frustrated Plaintiff's ability to intelligently respond to Defendant's electronic fund transfers because Plaintiff could not adequately respond to the Defendant's conduct in violation of Reg. E and EFTA.

### *Respondeat Superior Liability*

82.　The acts and omissions herein of the individuals employed by Defendant, and the other individuals employed as agents of Defendant as further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant.

83.　The acts and omissions by these individuals were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant.

84.　By committing these acts and omissions against Plaintiff, these individuals were motivated to benefit their principal, Defendant.

85.　Defendant is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its employees, including but not limited to violations of the Reg. E and EFTA and state law.

### **TRIAL BY JURY**

86.　Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.

### **CAUSES OF ACTION**

### **COUNT I.**

## VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT AND REG. E

## 15 U.S.C § 1693 *et seq*. and 12 C.F.R § 205 *et seq.*

87.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

88.   The foregoing intentional and negligent acts and omissions of Defendant constitutes numerous and multiple violations of EFTA and Regulation E including, but not limited to, each and every one of the above-cited provisions of EFTA, 15 U.S.C. § 1693 *et seq.*

89.   As a result of Defendant's violations of EFTA and Regulation E, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1693m(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1693m(a)(2)(A); treble damages under 15 U.S.C. § 1693f; and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 169m(a)(3) from Defendant.

90.   Electronic funds transfers made by covered entities are subject to procedural requirements designed to protect consumers like Plaintiff from transactions made in error or without the consumer's consent.

91.   Defendant failed to provisionally recredit  Plaintiff's bank account for a disputed electronic funds transfer and failed to undertake a timely, reasonable, and good faith investigation of the disputed amount, as required by the EFTA.

92.   Defendant failed to promptly provide copies of the documentation it relied upon in determining that no error had occurred in making these fraudulent transfers from Plaintiff's accounts after he demanded copies of such documents, as required by and

in violation of EFTA, which states in relevant part:

> If the financial institution determines after its investigation pursuant to subsection (a) or (c) that an error did not occur, it shall deliver or mail to the consumer an explanation of its findings within 3 business days after the conclusion of its investigation, and **upon request of the consumer promptly deliver or mail to the consumer reproductions of all documents which the financial institution relied on to conclude that such error did not occur**.

15 U.S.C. §§ 1693f(d) (bold underline added).

93.   Plaintiff has suffered damages as a result of Defendant's violations of the EFTA.

94.   Pursuant to 15 U.S.C. § 1693f(e) and 1693m, EFTA and Reg. E, Plaintiff seeks statutory damages, actual damages, treble damages, and reasonable costs and attorneys' fees from Defendant.

## COUNT II.

## CONVERSION

95.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

96.   Under Minnesota law, conversion is defined as an act of willful interference with the personal property of another which is without justification or which is inconsistent with the rights of the person entitled to the use, possession or ownership of the property.   *Reisdorf v. i3, LLC*, D.Minn.2015, 129 F.Supp.3d 751.

97.   The elements of conversion are: "(1) the plaintiff has a property interest; and the defendant deprived the plaintiff of that property interest." *Smith v. Lurie*, Civil No. 09-3513 (D. Minn. May 10, 2011) (*citing Lassen v. First Bank Eden Prairie*, 514 N.W.2d 831, 838 (Minn. Ct. App. 1994)).

-20-

98.    Plaintiff held a possessory interest in all of the $15,000 of personal funds in Plaintiff's bank accounts held by Defendant.

99.    Plaintiff's interest in his personal funds was greater than any interest held by Defendant.

100.   Defendant deprived Plaintiff of the property interest in his account funds by taking these funds without Plaintiff's authorization and thereafter refusing to return them in violation of its obligations under EFTA.

101.   Defendant did not return or offer to return Plaintiff's personal property that it took from his without right, consent or permission, despite lawful demands that had been made by Plaintiff to Defendant.

102.   Defendant's interference with Plaintiff's property rights in his illegally transferred funds, including but not limited to the $15,000, was a substantial one for which he has suffered serious damages and actual harm.

103.   Defendant exercised dominion or control over or seriously interfered with Plaintiff's interest in those funds and such conduct deprived Plaintiff of his interest in those funds.

104.   The foregoing acts and omissions of Defendant and its employees and agents constitute a civil conversion of Claimant's personal property.

105.   The measure of damages for conversion is "the market value of the property at the time of the conversion, plus interest from that time." *Smith*, Civil No. 09-3513 (*citing Dairy Farm Leasing Co. v. Haas Livestock Selling Agency, Inc*., 458 N.W.2d 417, 419 (Minn. Ct. App. 1990)).

106.   As a result of Defendant's multiple conversions, Plaintiff is entitled to damages in an amount based upon the value of the property converted, plus interest from the time of Defendant's conversion.

## COUNT III.

## BREACH OF FIDUCIARY DUTY

107.   Plaintiff and Defendant shared a relationship whereby Plaintiff reposes trust and confidence in Defendant, and Defendant undertakes such trust and assumes a duty to advise, counsel and/or protect Plaintiff.

108.   Thereafter, Defendant breached its duties to Plaintiff.

109.   Banks owe a customer a fiduciary duty whenever

> "[The] bank knows or has reason to know that **the customer is placing his trust and confidence in the bank and is relying on the bank so to counsel and inform him.**" *Klein v. First Edina Nat'l Bank,* 196 N.W.2d 619, 623 (Minn.1972); *Hurley v. TCF Banking & Sav., F.A.,* 414 N.W.2d 584, 587 (Minn.Ct.App.1987) ("Generally, a bank is not in a fiduciary relationship with a customer, rather the relationship is one of debtor and creditor.").

Kichler v. Wells Fargo Bank, N.A., No. CIV. 12-1206 JRT/AJB, 2013 WL 4050204, at *4 (D. Minn. Aug. 9, 2013).

110.   Defendant knew or should have known that Plaintiff was reasonably placing his trust and confidence in its fraud department employees to not only detect fraudulent electronic funds transfer activities on his account, but to stop that fraud and protect his funds from third-party fraudsters once they called to alert him of the fraud.

111.   Defendant knew or should have known that Plaintiff was reasonably relying upon Defendant to counsel and inform him of the fraudulent transfers activities on his

accounts.

112.   Once Defendant detected fraudulent activity on Plaintiff's accounts and which it alerted him to, Defendant thereafter breached its fiduciary duties to Plaintiff to shut down the accounts, stop the fraudulent and unauthorized transfers under the EFTA, and return Plaintiff's funds promptly to his accounts.

113.   Defendant's breach has caused Plaintiff to suffer serious damages, including but not limited to the loss of his $15,000.

## COUNT IV.

## NEGLIGENCE

114.   Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

115.   The foregoing acts and omissions of Defendant and its agents constitute negligence with respect to Plaintiff.

116.   As a result of Defendant's negligence, Plaintiff is entitled to actual damages and reasonable attorney's fees and costs pursuant to Minnesota Law, from Defendant.

## COUNT V.

## BREACH OF CONTRACT

117.   Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

118.   Plaintiff had a contract in the form of an offer by Defendant to provide banking services, and acceptance by Plaintiff of that offer, and consideration exchanged between the parties.

119.    The foregoing acts and omissions of Defendant and its agents constitute breach of contract with respect to Plaintiff, namely, its failure to properly safeguard his funds and comply with federal law in promptly returning those funds that were fraudulently transferred.

120.    As a result of Defendant's breach of contract, Plaintiff is entitled to actual damages and reasonable attorney's fees and costs pursuant to Minnesota Law, from Defendant.

## COUNT VI.

## BREACH OF GOOD FAITH AND FAIR DEALING

121.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

122.    Defendant had a duty to act in good faith by properly maintaining Plaintiff's bank accounts and protecting them from unauthorized transfers.

123.    Defendant negligently failed in these duties and failed to maintain any reasonable systems that would have prevented such failures against Plaintiff.

124.    Defendant breached its duty to act in good faith by intentionally failing to comply with federal laws governing the prompt return of Plaintiff's funds and the undertaking of a good faith investigation into the unauthorized transfers for those funds.

125.    Plaintiff has been seriously damaged by Defendant's multiple breaches of good faith and fair dealing in this Contract and is entitled to actual damages, compensatory damages, expectancy damages, costs and attorney's fees.

## COUNT VII.

## DECLARATORY RELIEF

126.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

127.   An actual controversy has arisen and now exists between Plaintiff and Defendant concerning their respective rights and duties in that Plaintiff contends that Defendant breached its contract with Plaintiff and violated federal laws with respect to failing to promptly return his $15,000; and, whereas Defendant apparently disputes this contention and by its conduct contends that it had no duties to Plaintiff and that Plaintiff is not entitled to a return of his fraudulently transferred $15,000.

128.   Plaintiff desires a judicial determination of Defendant's rights and duties, and if they so exist, the extent of the liability of Plaintiff to Defendant, if any, and vice versa.

129.   A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain Plaintiff's rights and duties because Plaintiff's personal business affairs are seriously impaired by and Defendant's contentions that he is not entitled to a return of his funds, and Plaintiff is otherwise suffering a financial burden by this unsettled state of affairs with this Defendant.

130.   Declaratory relief is therefore appropriate in order to bring peace to the parties and prevent either of Defendant from causing further unwarranted and unjust damage to Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant:

- For a judgment and decree that Defendant has engaged in the conduct alleged above, entering Judgment in favor of Plaintiff;

- for an award of actual damages pursuant to 15 U.S.C. § 1693m(a)(1) against Defendant and for Plaintiff;

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1693m(a)(2)(A) against Defendant and for Plaintiff;

- for an award of treble damages pursuant to 15 U.S.C. §1693f(e) against Defendant and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692m(a)(3) against Defendant and for Plaintiff;

- for an award of actual damages, compensatory damages, expectancy damages, in an amount based upon the value of the property converted, plus interest from the time of Defendant's conversion, with interest on such amount as allowed by law until paid for Defendant's conversion;

- for an award of actual, compensatory, and expectancy damages against Defendant for its breach of fiduciary duty;

- for actual and compensatory damages for Negligence in a reasonable amount to be determined by a jury, against Defendant;

- for actual and compensatory damages for Breach of Fiduciary Duty in a reasonable amount to be determined by a jury, against Defendant;

- for actual and compensatory damages, expectancy damages, costs of litigation and attorney's fees for Breach of Contract in a reasonable amount to be determined by a jury, against Defendant;

- for actual and compensatory damages, expectancy damages, costs of litigation and attorney's fees for Breach of Good Faith and Fair Dealing in a reasonable amount to be determined by a jury, against Defendant;

- for a judgment and decree and decree that Defendant has engaged in the conduct alleged above, entering Judgment in favor of Plaintiff, and making a judicial determination that Plaintiff's $15,000 in funds should be returned;

- for an award of both pre- and post-judgment interest at the maximum allowable rate on any amounts awarded;

- and for such other and further relief as may be just and proper.

Respectfully submitted,

**THE BARRY LAW OFFICE, LTD**

Dated: November 30, 2021

By:  s/ Peter F. Barry
Peter F. Barry, Esq.
Attorney I.D.#0266577
333 Washington Ave No, Suite 300-9038
Minneapolis, MN 55401-1353
Telephone:  (612) 379-8800
pbarry@lawpoint.com

*Attorney for Plaintiff*

## **VERIFICATION OF COMPLAINT AND CERTIFICATION**

STATE OF MINNESOTA      )
                                         ) ss
COUNTY OF HENNEPIN      )

Pursuant to 28 U.S.C. § 1746, Plaintiff Jeffrey Loch verifies, certifies, and declares as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on    Nov 30, 2021               Jeffrey Loch (Nov 30, 2021 20:04 CST)
                                           Signature

**NOTICE TO PRESERVE ALL DOCUMENTS, RECORDINGS, AND TANGIBLE THINGS, AND ALL ELECTRONICALLY STORED INFORMATION ("Notice")**

To the Defendant(s) Above:

**As you know, this law firm has been retained to represent the Plaintiff in the above captioned matter ("Lawsuit").** As used in this notice, the terms "you" and "your" refer to the Defendant(s) above-named and their predecessors, successors, parents, subsidiaries, divisions and affiliates and its respective officers, directors, agents, attorneys, accounts, employees, partners, contractors and other persons occupying similar positions or performing any functions on behalf of Defendant.

**My client respectfully demands that you preserve all recordings, documents, tangible things and electronically stored information that are in anyway relevant to the Lawsuit.** A civil suit has been commenced against you by my client in the District Court herein, related to the matters described herein.

**You have a legal duty to preserve evidence in this matter.** This duty to preserve evidence exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. The Minnesota Supreme Court has specifically addressed this issue:

> We have said that the spoliation of evidence is the "failure to preserve property for another's use as evidence in pending or future litigation." *Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc.,* 456 N.W.2d 434, 436 (Minn.1990) (quoting *County of Solano v. Delancy,* 264 Cal.Rptr. 721, 724 n. 4 (Cal.Ct.App.1989)). Further, we have recognized that, regardless of whether a party acted in good or bad faith, "the affirmative destruction of evidence has not been condoned." *Patton,* 538 N.W.2d at 119. The duty to preserve evidence[2] exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. *See id.* at 118–19. Breach of the duty to preserve evidence once such a duty arises may be sanctioned, under a court's inherent authority, as spoliation. *See id.* at 118. Here, we specifically reaffirm our rule that custodial parties have a duty to preserve relevant evidence for use in litigation. *Id.* at 116. We also reaffirm our previously stated rule that, even when a breach of the duty to preserve evidence is not done in bad faith, the district court must attempt to remedy any prejudice that occurs as a result of the destruction of the evidence. *Id.*

<u>Miller v. Lankow</u>, 801 N.W.2d 120, 127–28 (Minn. 2011)

**Once a duty to preserve evidence has arisen, the breach of that duty may subject a party to sanctions under a court's inherent authority as spoliation.** "Courts have long afforded redress for the destruction of evidence * * *." Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc., 456 N.W.2d 434, 436 (Minn.1990).

**Much of the information that is subject to disclosure or responsive to discovery in this case may be stored on your current and former computer systems and other media and devices, including personal digital assistants, voice messaging systems, online repositories, telephone recording systems, hard drives and cell phones**.  The term Electronically Stored Information (hereinafter "ESI") should be afforded the broadest possible meaning and includes (by way of example and not as an exclusive list) potentially relevant information electronically, digitally, magnetically, optically or otherwise stored as:

- Audio and/or video records of any telephone calls and conversations made related to the events described in the Lawsuit
- digital communications (for example email, voicemail, imaging, scanning, and/or instant messaging);
- email service stores and server information (for example SQL Server, Oracle, Dropbox, Box, lotus, domino.nsf, Microsoft exchange.edb, Google Corporate Gmail, etc.);
- word processing documents (for example Microsoft Word or WordPerfect files and all drafts thereof);
- spreadsheets and tables;
- accounting application data;
- imaging and facsimile files;
- recordings of any conversations with my client;
- phone records of any calls to my client;
- databases (for example Access, Oracle, SQL Server data);
- Contact and relationship data management (for example Outlook, Ask or Interaction);
- Calendar and diary application data;
- online access data (for example temporary internet files, history files and cookies);
- presentations (for example PowerPoint and Corel presentations);
- network access and server activity logs relating to information exchanged between you and third parties, and by you with third parties;
- project management application data;
- backup and archival files;
- letters, documents, or correspondence of whatever kind related to existing loss prevention policies, and changes, updates, alterations made to loss prevention policies for the past three (3) years

**My client hereby demands that you preserve both accessible and inaccessible ESI**. This demand is reasonable and necessary.  Pursuant to the Rules of Civil Procedure, in the event of an eventual civil suit you must identify all sources of ESI you decline to produce and demonstrate why such sources are not reasonably accessible.  For good cause shown in that event, the Court may order production of ESI even if it is not reasonably accessible.  Accordingly, you must preserve ESI that you deem inaccessible so as not to preempt the Court's authority.

**Preservation requires your immediate intervention.**  You must act immediately to preserve potentially relevant ESI, including, without limitation, information and the earlier of a created or last modified date for ESI concerning any activity, updates, changes, alterations, or modifications to the information maintained by you related to the events described in the above-referenced lawsuit, through the date of this demand.  Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence.  You must immediately intervene to prevent loss due to routine operations or malfeasance and employ proper techniques and protocols to preserve ESI. Booting a drive, examining its contents or running any application may irretrievably alter the evidence contained therein and constitute spoliation of evidence.

**You are also directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with that litigation hold.**  You are further directed to immediately identify and modify or suspend features of your information systems and devices, which, in routine operation, operate to cause the loss of potentially relevant ESI.  Examples of such features and operations that could result in spoliation include:

- purging the contents of email repositories by age, capacity or any other criteria
- using data or media wiping, disposal, erasure of encryption utilities or devices
- overriding erasing, destroying or discarding backup media
- reassigning, re-imaging or deposing of systems, servers, devices or media
- running antivirus or other programs affecting wholesale metadata alteration
- releasing or purging online storage repositories
- using metadata stripper utilities
- disabling server, packet or local instant messaging login
- executing drive or file defragmentation or compression programs
- shredding or other destruction of documents, routine or otherwise

**You should anticipate that your officers, employees, or others may seek to hide, destroy or alter ESI.**  This is not a concern that is unique to you or your organization.

Rather it is simply conduct that occurs with such regularity that any custodian of ESI and their counsel must anticipate and guard against its occurrence.  You are directed to preserve complete backup tape sets (including differentials and incrementals) containing recordings, emails and ESI for any person involved in the activity, updates, changes, alterations, or modifications to the information maintained by you related to the events described in the above-referenced lawsuit, through the date of this demand, whether inside or outside of your organization and control.  You should also take affirmative steps to prevent anyone with access to your data, systems or archives from seeking to modify destroy or hide ESI.

**As an appropriate and cost-effective means of preservation, you should remove from service and securely sequester the systems, media and devices housing potentially relevant ESI.**  In the event that you deem it impractical to sequester those systems, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems identified above is expedient and cost effective.  As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods.   Failure to use such methods imposes a significant threat of spoliation and data loss.  Be advised that a conventional copy, backup or ghosting of a hard drive does not produce a forensically sound image because it only captures active, unlocked data files and fails to preserve forensically significant data.

**You should anticipate that certain ESI, including but not limited to recordings, spreadsheets and databases will be sought in the forms or form in which it was ordinarily maintained, that is in native form.**  Accordingly, you should preserve ESI in such native forms and should not employ methods to preserve ESI that remove or degrade the ability to search ESI by electronic means or that make it difficult or burdensome to use that information.

**You should further anticipate the need to disclose and produce system and application metadata and act to preserve it.**  System metadata is information describing the history and characteristics of other ESI.  This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access.  Metadata may be overwritten or corrupted by careless handling or improper preservation, including by moving, copying or examining the contents of files.  As hard copies do not preserve electronic search ability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions.  If information exists in both electronic and paper forms, you should preserve both the forms.

**We desire to work with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol if you will furnish an inventory and description of the systems and media to be preserved.**  Alternatively, if you

promptly disclose the preservation protocol you intend to employ, perhaps we can now identify any points of disagreement and resolve them.

**A successful and compliant ESI preservation effort requires expertise.**  If you do not currently have such expertise, we urge you to engage the services of an expert in electronic evidence and computer forensics.  Perhaps our respective experts can work cooperatively to secure a balance between evidence preservation and burden that is fair to both sides and acceptable to the Court.  I am available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay.  Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay of production of evidence to which we are entitled, that failure would constitute spoliation of evidence.

**Please confirm in writing no later than five (5) business days from the date of this Notice, that you have taken the steps outlined in this Notice to preserve ESI and tangible documents potentially relevant to this pending action.**  If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.

If you retain legal counsel with respect to these matters, please direct this Notice to their immediate attention.  Thank you for your anticipated cooperation in this vital matter.